[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 16, 2003
THOMAS K. KAHN
CLERK

No. 03-12396
Non-Argument Calendar

D. C. Docket No. 01-03419-CV-CC-1

FOXY LADY, INC.,
d.b.a Foxy Lady,
DARIUS L. MITCHELL, agent
for the alcoholic beverage license
of Foxy Lady, Inc.,
S.G.T., INC.,
d.b.a. Pleasers,
M. PAUL HICKS, JR., agent
for the alcoholic beverage license
of S.G.T., Inc.,

Plaintiffs-Appellees,

versus

CITY OF ATLANTA, GEORGIA,
SHIRLEY FRANKLIN, Mayor,
in her official capacity as Mayor
for the City of Atlanta, Georgia,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Georgia

**(October 16, 2003)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After the City of Atlanta ("The City") ordered the plaintiffs[1] (the "Clubs") to show cause why their alcoholic beverage licenses should not be revoked for non-compliance with City of Atlanta ordinances concerning the regulation of nude dancing, the Clubs filed this 42 U.S.C. § 1983 action seeking, among other relief, a permanent injunction enjoining the City from proceeding with the revocation hearings. The Clubs contended that the City ordinances governing the liquor license revocation process did not provide them with the right to subpoena witnesses, and therefore the City's process for revocation of the Clubs' liquor licenses violated the Clubs' procedural due process rights.

The district court agreed with the Clubs, denied the City's motion for summary judgment, and certified its order for interlocutory appeal.[2] This Court then granted the City's application for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). After review, we conclude that the City provides a constitutionally

---

[1]In this case, Darius Mitchell and Paul Hicks own and operate Fox Lady and Pleasures, respectively. The permits to sell alcohol on the premises are in the names of the two gentleman, but for the sake of simplicity we refer only to the Clubs throughout the opinion.

[2]The City agreed to stay the revocation proceedings pending the outcome of this case.

adequate process for the revocation of a liquor license. Thus, we vacate the district court's denial of summary judgment to the City.

## I. FACTUAL BACKGROUND

The Clubs operate nude-dance facilities which are licensed by the City to sell alcoholic beverages for consumption on the premises. The City sought to revoke the Clubs' liquor licenses alleging their dancers were violating certain laws.[3] For example, under Georgia law, "touching, caressing, or fondling of the breast, buttocks, anus, or genitals" is prohibited in any premise which is licensed to sell alcoholic beverages. O.C.G.A. § 3-3-41(a)(2); see also Harris v. Ent. Sys., Inc., 259 Ga. 701, 704 (1989) (limiting the scope of the statute under the Georgia Constitution). Under the City's ordinances, it is unlawful for "any person to commit" or "any licensee to knowingly permit or allow" any of the following acts: "For any person to touch, caress or fondle an entertainer or dancer, except to place money in garters worn for such purposes" or "[f]or any dancer to, by bending, stooping and other postural movements, display the interior of the dancer's anus or

---

[3]The record is somewhat unclear as to whether the City sought to revoke the Clubs' licenses or was providing notice because it was refusing to renew the Clubs' liquor licenses. In this case it does not make any difference because the procedure applied to either process is the same. For the sake of simplicity and because it appears from the record that the City was attempting to revoke the Clubs' liquor licenses, we shall refer to the proceedings as the City's attempt to revoke the Clubs' liquor licenses.

3

vagina." Code of Ordinances of the City of Atlanta ("C.O.C.A.") § 10-228(b)(1) & (b)(3).

In October 2001, the City ordered Pleasures to show cause why its alcoholic beverage license should not be revoked for two illegal incidents. Specifically, the City alleged that on September 28, 2000, "8 female dancers were observed using their hands to fondle their breasts and vagina while dancing nude." The City also alleged that on March 12, 2001, 13 dancers were "dancing improperly." In November 2001, Foxy Lady received a similar letter to show cause why its alcoholic beverage license should not be revoked, alleging that on August 1, 2001, "12 female dancers were observed dancing improperly."

Although charges were brought against the female dancers for their alleged conduct, all charges were eventually dismissed without adjudication. The City, however, proceeded with its attempt to revoke both Clubs' liquor licenses.

As mentioned above, the Clubs filed this § 1983 action seeking to enjoin the City from proceeding with the revocation hearings, arguing that the City's liquor license revocation process violated procedural due process. The district court denied the City's motion for summary judgment, stating that the Clubs "cannot receive a meaningful hearing under the City of Atlanta's current license revocation process without the right to subpoena witnesses." Because the Clubs did not have

an absolute or independent right to subpoena witnesses, the district court concluded that the City's process for license revocation violated procedural due process rights guaranteed under the Fourteenth Amendment. The district court denied the City's motion for summary judgment, and this interlocutory appeal followed.

## II. DISCUSSION

A.  Liquor License Revocation Process in Georgia

Before discussing the substantive issue in this case, we first outline the process applied in the City of Atlanta before the City can revoke an establishment's liquor license. Pursuant to C.O.C.A. § 10-109(c), the City must provide "five-day written notice to the licensee, stating the place, date, time and purpose of such hearing and setting forth the charge upon which the hearing shall be held." In this case, Paul Hicks and Pleasures received written notice on October 29, 2001, of its liquor license revocation hearing on November 20, 2001. The notice provided more than three weeks notice and in all other ways complied with § 10-109(c). As for Darius Mitchell and Foxy Lady, the City notified Mitchell on November 11, 2001, of the liquor license revocation hearing on

5

December 4, 2001. Once again, the City provided more than three weeks notice and in all other respects complied with § 10-109(c).

Because the Clubs filed this § 1983 action and the City voluntarily agreed to stay the liquor license revocation proceedings until this case is resolved, the remainder of the liquor license revocation process was not implemented. However, pursuant to § 10-109, the License Review Board would normally "conduct the hearings and report its conclusions and recommendations to the mayor." C.O.C.A. § 10-109(d).

At a liquor license revocation hearing, the License Review Board must afford the Clubs an opportunity to present their evidence, to introduce testimony in support of their case, and to cross-examine the City's witnesses (presumably the under-cover police officers who witnessed the dancers' alleged acts).[4]

---

[4]Although § 10-109 provides for a hearing, § 10-109 does not describe the exact contours of what happens at a hearing before the License Review Board. However, the Georgia Supreme Court has stated that "local governments are not exempted from the due process requirements of the Fourteenth Amendment" when "regulat[ing] the sale of alcoholic beverages" and that in liquor license revocation hearings, "the parties must generally be allowed an opportunity to know the claims of the opposing party, to present evidence to support their contentions, and to cross-examine witnesses for the other side." Grovenstein v. Effingham County, 262 Ga. 45, 48 (1992) (internal brackets, quotations, and citations omitted). Thus, based on Grovenstein and because the Clubs do not contend otherwise, we conclude that the Clubs will have an opportunity to present evidence, introduce testimony, and cross-examine witnesses. Grovenstein, however, does not address whether parties have a right to subpoena witnesses to liquor license revocation hearings.

Furthermore, pursuant to C.O.C.A. § 30-27,[5] a party can request that the Mayor or the Mayor's designee issue a subpoena to compel a witness to appear before the License Review Board.

After the hearing, the License Review Board issues a report to the Mayor, recommending that the Clubs' liquor license be revoked, suspended, or renewed. The Mayor, upon a finding of "due cause," then has the authority to revoke, suspend, or renew the Clubs' liquor licenses. See C.O.C.A. § 10-109(b) & (d). Due cause is defined at length in § 10-109(a). The applicable definitions of "due cause" in this case are: the "[f]ailure by the licensee to adequately supervise and monitor the conduct of the employees . . . on the licensed premises" or "[t]he violation of any other law, ordinance or regulation governing the operation of

---

[5]Specifically, § 30-27(a) states:
Whenever the attendance of any witness may be required before the license review board to establish any fact in connection with any hearing or any investigation which may be lawfully conducted by the license review board, the mayor or the mayor's designee is authorized to issue a subpoena, directed to the witness, requiring the witness to personally be and appear at the time and place of the meeting of the board and to produce at that time and place any documentary evidence which, in the judgment of the board, may be required. Such witness shall remain in attendance upon the meeting until excused therefrom. The subpoena shall bear teste in the name of the city, shall be signed by the mayor or the mayor's designee and shall be served by any member of the department of police. Such service shall be had at least 24 hours before the time such witness is required to attend and to continue the attendance of the witness.
C.O.C.A. § 30-27(a) (emphasis added).

7

establishments licensed to sell alcoholic beverages." See C.O.C.A. § 10-109(a)(12) & (14).

B.    Right to Subpoena Witnesses

In this case, the district court concluded that the process described above violated the Clubs' procedural due process rights because the Clubs did not have the absolute or independent right to subpoena witnesses before the License Review Board. On appeal, the City argues that due process does not require an absolute or independent right to subpoena witnesses at an administrative hearing, and that the Atlanta City Code provides a reasonable means by which witnesses may be subpoenaed for the revocation hearing. We agree, and conclude that the City provides a constitutionally adequate process for the revocation of a liquor license.

In Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994), this Court developed a three-prong test for establishing a procedural due process clause violation under § 1983. First, the Clubs must establish "a deprivation of a constitutionally-protected liberty or property interest." Id. The parties do not dispute that the Clubs have a constitutionally-protected property interest in their existing respective liquor licenses, and we do not discuss that question.

8

Second, the Clubs must establish "state action." Cryder, 24 F.3d at 177.

Once again, the parties do not dispute that the City's attempts to revoke the Clubs'

liquor licenses amount to state action for the purposes of § 1983. See Bell v.

Burson, 402 U.S. 535, 539, 91 S. Ct. 1586, 1589 (1971) ("Once licenses are

issued, as in [this] case, their continued possession may become essential in the

pursuit of a livelihood. Suspension of issued licenses thus involves state action

that adjudicates important interests of the licensees.").

Third, and finally, the Clubs must establish a "constitutionally inadequate

process." Cryder, 24 F.3d at 177. The parties dispute whether the Clubs must

have a right to subpoena witnesses to the revocation hearing in order for the City's

liquor license revocation process to be constitutionally adequate.

In Goldberg v. Kelly, 397 U.S. 254, 268-69, 90 S. Ct. 1011, 1021 (1970),

the United States Supreme Court explained that "[t]he opportunity to be heard

must be tailored to the capacities and circumstances of those who are to be heard."

That is, procedural due process "is not a technical conception with a fixed content

unrelated to time, place, and circumstances." Mathews v. Eldridge, 424 U.S. 319,

334, 96 S. Ct. 893, 902 (1976) (quotation marks and citation omitted). Rather,

procedural due process "is flexible and calls for such procedural protections as the

particular situation demands." Id. (quotation marks and citation omitted).

9

Therefore, there is a need to balance the governmental and private interests at stake. Id. (citations omitted).[6]

In Travers v. Jones, 323 F.3d 1294 (11th Cir. 2003), petition for cert. filed, 72 USLW 3155, No. 03-321 (Aug. 27, 2003), this Court addressed the right to subpoena witnesses to an administrative hearing in the context of a firefighter who had been suspended without pay due to insubordination and conduct unbecoming. Specifically, firefighter Travers was involved in a verbal exchange with the Chief Executive Officer of DeKalb County while Travers and others were picketing outside DeKalb County's administration building. Travers was suspended for the incident, and brought suit alleging that he was improperly suspended because he was engaging in protected speech. Id. at 1295.

The Travers Court recognized that a factual dispute existed between the parties as to what was said exactly between Travers and the CEO of DeKalb County. Travers, 323 F.3d at 1296. The issue of fact, however, had been resolved

_____

[6]Specifically, the Supreme Court has identified three distinct factors to be considered when determining what constitutional process is due.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335, 96 S. Ct at 903.

10

during a state administrative hearing in which Travers's suspension was upheld. Id. The Travers Court noted that the state administrative findings were binding on this Court if Travers received a full and fair opportunity to present his case at the administrative hearing. Id.

On appeal to this Court, Travers argued that he was denied a full and fair hearing because he was denied the right to compel certain witnesses to testify at the administrative hearing. Travers, 323 F.3d at 1296-97. Travers admitted, however, that he failed to comply with the administrative procedures regarding the means by which a witness could be compelled to testify at the administrative hearing. Id. at 1297. Consequently, this Court concluded that "[t]he County afforded Travers the opportunity to a hearing where he could present live witnesses and cross-examine opposing witnesses. Travers' inability to do so was a result of his own tardiness." Id. In so concluding, this Court went further, however, and stated that "a party has no right to subpoena witnesses to state administrative hearings." Id. (citations omitted). In support its adoption of that general principle, the Travers Court cited with approval decisions from other circuits recognizing the ability to subpoena witnesses is not an absolute or independent right in administrative hearings. Id.; see Amundsen v. Chicago Park Dist., 218 F.3d 712, 717 (7th Cir. 2000) ("Nonetheless, this court has held that in

11

the administrative hearing context, the ability to subpoena witnesses is not an absolute right. . . . Indeed, in administrative matters, due process is satisfied when the party concerned is provided an opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute." (quotation marks and citations omitted)); Calvin v. Chater, 73 F.3d 87, 92-93 (6th Cir. 1996) (agency may place reasonable limitations on the process for producing witnesses to testify); DeLong v. Hampton, 422 F.2d 21, 24 (3d Cir. 1970) ("It was plaintiff's burden to arrange for the attendance of any witnesses he wished to testify.").

We agree that reasonable limitations may be placed on the number and scope of witnesses that may be compelled to testify at an administrative hearing. Therefore, we also agree with Travers that no absolute or independent right to subpoena witnesses exists during administrative proceedings, and now hold expressly that procedural due process also does not require an absolute or independent right to subpoena witnesses in administrative hearings.

The City's ordinance requiring the Clubs to request the Mayor to issue a subpoena provides an acceptable balance between the need to conduct a fair hearing and the City's legitimate desire to place reasonable limitations on the content and duration of its liquor license revocation hearings. See C.O.C.A. § 30-

27; see also Richardson v. Perales, 402 U.S. 389, 406, 91 S. Ct. 1420, 1430 (1971) (noting that "the sheer magnitude of [the] administrative burden" is "an additional and pragmatic factor which, although not controlling, deserves mention" (quotation marks and citations omitted)).

While it is true that there is no guarantee that the Clubs will be able to convince the Mayor or the Mayor's designee to subpoena all the witnesses the Clubs want to call, § 30-27 provides a reasonable framework from which to judge what witnesses are necessary. Specifically, the witnesses that can "establish any fact in connection with any hearing or any investigation which may be lawfully conducted by the license review board" is a reasonable limitation on what witnesses should be present at the hearing. Furthermore, there is nothing in the record to suggest that the Mayor or the Mayor's designee does not follow these limitations or that different standards are in place for the adult entertainment industry.

Furthermore, it makes perfect sense for the Mayor's office to control the issuance of subpoenas in the license revocation process. For if it were otherwise, one can easily imagine the process becoming cumbersome and potentially unmanageable. For example, if the Clubs were to have their own, absolute or independent subpoena power, they effectively could stop, or at the very least delay

13

significantly, the entire revocation process by issuing subpoenas to potentially hundreds of individuals. In the hopes of frustrating the City's efforts, the Clubs could subpoena witnesses ranging from club regulars to testify that they have never seen any dancer commit one of the enumerated violations to the dancer's parents who may testify that their child is unlikely to do such things.

Finally, it is readily apparent that the Clubs' claim of a dire need to subpoena witnesses is exaggerated. At the liquor license revocation hearing, the Clubs undoubtedly will be able to cross-examine the undercover police officers who allegedly witnessed the illegal acts. Additionally, the Clubs will be able to introduce testimony from witnesses with relevant information, such as certain dancers, who agree to testify voluntarily. Finally, the Clubs may wish to introduce evidence, to the extent it exists, about how they inform all their dancers of the rules surrounding nude dancing, that they post the rules in conspicuous places, and/or how the Clubs discipline those dancers found violating city ordinances. Such information may be relevant to the decision to revoke or not revoke the Clubs' liquor licenses.

C.    Effective State Remedy

Alternatively, to the extent that there is an argument that the City's current license revocation process amounts to a procedural deprivation, the State of

Georgia provides an adequate means by which to remedy any allegedly unlawful deprivation, and the Clubs' procedural due process claim here is not cognizable under federal law. In <u>McKinney v. Pate</u>, 20 F.3d 1550 (11th Cir. 1994) (<u>en</u> <u>banc</u>), this Court held that even if a procedural deprivation exists during an administrative hearing, such a claim will not be cognizable under § 1983 if the state provides a means by which to remedy the alleged deprivation. <u>Id.</u> at 1565 ("Since the Florida courts possess the power to remedy any deficiency in the process by which McKinney was terminated, McKinney can not claim that he was deprived of procedural due process."); <u>see</u> <u>also</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). In <u>Horton v. Board of County Comm'rs. of Flagler County</u>, 202 F.3d 1297 (11th Cir. 2000), this Court explained that

> The *McKinney* rule is not micro in its focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks to the existence of an opportunity – to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then

15

> there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

Id. at 1300.

The Clubs spend a great deal of time arguing that there is no state remedy because they are unable to petition the Georgia superior courts for a writ of certiorari to correct any procedural defects in the Mayor's decision to revoke the Clubs' liquor licenses. We need not address this issue in great detail because the Georgia Supreme Court recently has noted the filing of petitions for certiorari in two cases in which a business owner appealed a city's decision not to renew a liquor license. See Northwest Social & Civic Club, Inc. v. Franklin, 583 S.E.2d 858 (Ga. 2003); Consolidated Gov't of Columbus v. Barwick, 274 Ga. 176 (2001); see also Horton, 202 F.3d at 1300 ("*McKinney* is based on a recognition that the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts would provide if asked."). In fact, Northwest Social and Civic Club dealt with the situation in which the owner of a nightclub which featured adult entertainment petitioned for writs of mandamus and certiorari against the City of Atlanta and its mayor after the Mayor denied the operator's application for renewal of its liquor license. Northwest Social & Civic Club, 583 S.E.2d at 859.

16

In both Barwick and Northwest Social and Civic Club, the Georgia Supreme Court addressed whether the plaintiffs who had been denied liquor licenses were entitled to a direct appeal to the Georgia Supreme Court or a discretionary appeal after their petitions for certiorari had been denied by the state superior courts. Barwick, 274 Ga. at 177-79; Northwest Social & Civic Club, 583 S.E.2d at 859. There is no threshold claim in either Georgia Supreme Court decision that the state superior courts did not have jurisdiction to consider a petition for certiorari for review of a city's liquor license decision. Instead, the Georgia Supreme Court discussions focused on what type of appeal lies for the state superior court orders. Thus, implicit in each of these decisions is the assumption that the state superior courts had jurisdiction to entertain petitions for certiorari from the denials of liquor license renewal applications. For if the superior courts were without such jurisdiction, we believe that the Georgia Supreme Court would have addressed the jurisdictional issue first. See, e.g., Southern Healthcare Sys., Inc. v. Health Care Capital Consol., Inc., 273 Ga. 834, 835 (2001) (addressing jurisdiction first); see also Dismer v. Luke, 228 Ga. App. 638, 638 (1997) ("Before addressing the merits of Dismer's appeal, we must first determine whether the superior court had jurisdiction.").

Accordingly, we conclude that sufficient state process exists to correct any alleged deficiency in the City's liquor license revocation process afforded under § 30-27. Because an adequate post-deprivation process is in place under state law, no federal procedural due process claim exists.

## III. CONCLUSION

For all the above reasons, we vacate the district court's order denying summary judgment to the City and remand this case to the district court for proceedings consistent with this opinion.

VACATED and REMANDED.