[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12023

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01511-CV-RWS-1

EDNA S. REAMS,

Plaintiff-Appellant,

versus

TOMMY IRVIN, individually and in his
official capacity as Commissioner of
the Georgia Department of Agriculture,
MELINDA DENNIS,
LAURA FOKES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 9, 2009)

Before BIRCH and BARKETT, Circuit Judges, and KORMAN,[*] District Judge.

BIRCH, Circuit Judge:

Edna Reams ("Reams") appeals the district court's grant of summary judgment on qualified immunity grounds in favor of Tommy Irvin, Commissioner of the Georgia Department of Agriculture ("GDA"); Melissa Dennis, Director of the Equine Division of the GDA; and Laura Fokes, an equine inspector employed by the state of Georgia (collectively, "Appellees"), in this 42 U.S.C. § 1983 civil rights action arising out of Appellees' impoundment of forty-nine of Reams' equine. On appeal, Reams argues that Appellees were not entitled to qualified immunity because their failure to provide her with (1) an opportunity to be heard prior to seizing her equines, (2) adequate notice of her right to and the procedures for requesting a hearing, and (3) adequate post-deprivation process, violated her clearly established due process rights. For the reasons that follow, we AFFIRM.

## I. BACKGROUND[1]

On 3 January 2006, Fokes obtained a warrant from the Macon County

---

[*] Honorable Edward Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

[1] Whether a defendant is entitled to qualified immunity is determined using the version of facts most favorable to the plaintiff. See Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008). Viewing the record in this light "eliminates all issues of fact" and allows "the court . . . to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute." Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005).

2

Magistrate Court to inspect Reams' family farm, located in Andersonville, Georgia, to determine whether the equines Reams kept on her land were being provided inadequate food and water in violation of the Georgia Humane Care for Equines Act, O.C.G.A. § 4-13-1 (2008) ("the Act").[2]  On 5 January 2006, Fokes and Dennis, along with Henry Loper, a doctor of veterinary medicine ("DVM") and federal Veterinary Medical Officer ("VMO") employed by the United States Department of Agriculture as a field veterinarian, arrived at Reams' farm to execute the warrant.  Dr. Loper determined that forty-six horses and three donkeys were not being provided with adequate food and water.  As a result of Dr. Loper's assessment, GDA officials impounded those forty-nine equines.  Reams, who was in Kansas when GDA officials executed the warrant, was not advised of her right to challenge the impoundment.

During a 26 January 2006 conference with Dennis and Fokes, Reams contested the impoundment and requested a hearing.  Appellees did not at that time advise Reams of her right to file a petition with the GDA pursuant to O.C.G.A. § 2-2-9.1(d).  Rather, Dennis insisted that Reams agree to a consent order, which imposed fines in connection with the care of her horses during the impoundment

---

[2] The Act makes it unlawful for the owner of any equine "[t]o fail to provide adequate food and water to such equine," or "[t]o fail to provide humane care for such equine."  O.C.G.A. § 4-13-3.

period and limited the number of equines Reams could keep on her farm.

Irvin subsequently issued an administrative order, citing Reams with failure to provide adequate food, water, and/or humane care to the impounded equines, directing her to reduce her herd to thirty equines, and assessing a fine of $74,000. It was not until she received the administrative order that Reams was explicitly notified of her right to a hearing. On 28 February 2006, Reams filed a Petition for Agency Review with the GDA challenging the administrative order, including the impoundment of her horses. After the GDA informed Reams that it would sell her equines if she refused to sign the consent order, Reams filed an emergency petition in Fulton County Superior Court to stay the sale of her equines pending the administrative review. On 23 March 2006, the court issued an order staying the sale of Reams' horses and authorizing Reams to retrieve her horses from the impound facility, so long as she provided a written assurance of adequate care and posted a $47,360 bond for the impoundment costs. The order also permitted GDA officials to access Reams' property until the conclusion of her administrative appeal in order to inspect the previously seized equines. At her own expense, Reams retrieved her equines, whose condition, she alleged, had worsened during their impoundment.

While her administrative action was still pending, Reams filed the instant

4

§ 1983 complaint in the United States District Court for the Northern District of Georgia. On 31 July 2006, she filed a motion with the GDA to stay the administrative proceedings pending the determination of her constitutional claims in federal court. After a hearing on Reams' petition for agency review, a GDA hearing officer issued an initial decision dismissing Reams' petition for lack of jurisdiction. On 21 December 2006, Commissioner Irvin issued a final order reversing and remanding on the jurisdictional issue but finding that Reams' challenge to the initial seizure of her horses was time-barred because the seizure occurred more than thirty days before she petitioned the agency for review on 28 February 2006. On 4 January 2007, Reams filed a petition in Fulton County Superior Court seeking review of the GDA's order disposing of her administrative challenges and alleging that the GDA violated her procedural due process rights.

In July 2007, Appellees moved for summary judgment on Reams' § 1983 complaint, arguing that (1) Reams failed to show that she was denied procedural due process because a pre-deprivation hearing was impracticable, and (2) O.C.G.A. § 2-2-9.1(d), which allows an owner of equines to contest an impoundment or an administrative order of the GDA disposing of impounded property, provided constitutionally adequate post-deprivation process.

The district court granted the motion, finding that Reams failed to

demonstrate a constitutional violation and therefore, appellees were entitled to qualified immunity. The court first found that pre-deprivation process was not practicable because "[a]ffording an equine owner an opportunity to be heard prior to impounding malnourished equines would . . . substantially impede a state's ability to enforce its laws respecting the humane treatment of equines." R5-85 at 12. The court then weighed the competing private and state interests and found that pre-deprivation process was not reasonable in this case because Georgia's interest in expeditious enforcement of the Humane Care for Equines Act outweighed Reams' interest in the temporary use of her equines between the time of impoundment and the time of a hearing, and because a post-deprivation hearing was unlikely to result in significant factual errors.

The district court further found that the post-deprivation procedures provided for under Georgia law were adequate to correct any alleged procedural deficiencies because they provided Reams with the opportunity to contest the impoundment, the administrative order relating to the impoundment, and the fines assessed for violation of the Act,[3] and because Reams was entitled under the Georgia Administrative Procedures Act to seek judicial review of GDA's actions

---

[3] The district court noted that the record contained no information regarding the nature or resolution of Reams' action in Superior Court challenging the GDA's disposition of her administrative claims, and that Reams did not allege that her state-court action was inadequate to provide meaningful review of the GDA's actions or administrative procedures.

in state court. This "judicial safety valve," the district court concluded, "foreclose[d] any constitutional challenge to the procedural adequacy of the hearing-and-appeal procedures set forth in the [Act]." Id. at 15. Finally, the court found that O.C.G.A. § 50-13-19 provided Reams with adequate notice of her ability to challenge the deprivation at issue, and that she failed to show that the alleged lack of a neutral decision-maker in the administrative process could not be cured by a Georgia state court pursuant to § 50-13-19.[4] Reams now appeals.

## II. DISCUSSION

On appeal, Reams argues that the district court erred in finding that: (1) a pre-deprivation hearing was not required; (2) statutory notice of a hearing right was sufficient; and (3) the post-deprivation process was adequate to satisfy due process. She asserts that because she demonstrated that GDA officials violated her clearly established due process rights, the district court erred in concluding that they were entitled to qualified immunity.

"We review the denial of summary judgment on qualified immunity grounds de novo." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000) (per curiam).

---

[4] In addition to her procedural due process claim, Reams also alleged Fourth Amendment and Equal Protection violations. Reams does not challenge the district court's grant of summary judgment in favor of Appellees on these claims and thus has abandoned them on appeal. See North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) ("[I]ssues not raised on appeal are abandoned.").

7

"[Q]ualified immunity shields government officials who perform discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights." Grayden v. Rhodes, 345 F.3d 1225, 1231 (11th Cir. 2003) (footnote omitted). In ruling upon the qualified immunity issue, we must engage in a two-step analysis: (1) whether the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, and, if so, (2) whether the right violated was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001); see also Cotton, 216 F.3d at 1330.[5]

A. Right to Pre-deprivation Hearing

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965)); Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994) ("Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest.").

---

[5] The Supreme Court recently held that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009). Rather, courts of appeal must exercise their discretion in deciding, given the circumstances of the particular case, which of the two prongs of the qualified immunity analysis should be addressed first. See id.

In this case, Reams contends that a hearing prior to the impoundment of her equines was required to satisfy due process. We disagree.

Although the Due Process Clause generally requires notice and an opportunity to be heard *before* the government seizes one's property, see, e.g., Quik Cash Pawn & Jewelry, Inc. v. Sheriff of Broward County, 279 F.3d 1316, 1322 (11th Cir. 2002), the Supreme Court has "rejected the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property." Parratt v. Taylor, 451 U.S. 527, 540-41, 101 S. Ct. 1908, 1915-16 (1981) (noting that its rejection of such a rule "is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available"), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662 (1986). Rather, because "due process is a flexible concept that varies with the particular circumstances of each case," we must apply the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, to determine whether pre-deprivation process was required in this case. Grayden, 345 F.3d at 1232-33; see also Bailey v. Bd. of County Com'rs of Alachua County, Fla., 956 F.2d 1112, 1123 n.12 (11th Cir. 1992) ("The need for some form of predeprivation hearing is

9

determined from balancing the competing interests at stake."). Under Mathews, the specific dictates of due process in any given case are determined by considering: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S. Ct. at 903.

While Reams' interest in maintaining her property rights to the impounded equines was not insubstantial, see, e.g., Porter v. DiBlasio, 93 F.3d 301, 306 (7th Cir. 1996) ("[T]here can be no dispute that an animal owner has a substantial interest in maintaining his rights in a seized animal. Such is especially the case with potential income-generating animals such as horses."), given the standards and procedures for inspection and impoundment prescribed by the Act,[6] and the fact that the state largely complied with these procedures, we find that the risk of

---

[6] Upon a showing of probable cause to believe that equines are not being provided with adequate food and water or humane care, the Commissioner of Agriculture may apply for a search warrant in order to inspect the equines, and may "impound any equine which has not been furnished with adequate food and water, which has not received humane care, or which has been subjected to cruelty in violation of Code Section 4-13-3." O.C.G.A. § 4-13-4(a), (b). Before the Commissioner may impound an animal pursuant to this provision, a licensed veterinarian must examine and determine the condition or treatment of the animal. See id. § 4-13-4(b).

10

an erroneous deprivation in this case was relatively low.[7]  See Grayden, 345 F.3d at

1234-35 (standards and procedures for inspection and condemnation under city

code, which authorized enforcement officer to enter and inspect building to

determine its condition, provided protection against risk of erroneous deprivation);

cf. Siebert v. Severino, 256 F.3d 648, 660 (7th Cir. 2001) (risk of erroneous

deprivation of interest in horses was great where state used volunteer investigator

"who apparently lacked sufficient knowledge about horses to determine whether

appropriate care was given").  Insofar as the decision to impound Reams' equines

was based upon an examination of the equines and an assessment of their condition

by a veterinarian, we find that an evidentiary hearing prior to impoundment was of

limited potential value and thus agree with the district court that a post-deprivation,

versus a pre-deprivation, hearing was "unlikely to spawn significant factual

errors."  R5-85 at 13.  See Memphis Light, Gas and Water Div. v. Craft, 436 U.S.

1, 19,  98 S. Ct. 1554, 1565 (1978) (advance procedural safeguards not

constitutionally required "where the procedures underlying the decision to act are

sufficiently reliable to minimize the risk of erroneous determination").  Moreover,

---

[7] Although Reams alleges that Dr. Loper was not qualified under GDA regulations to recommend impoundment because his license to practice veterinary medicine in the state of Georgia had been converted from active to inactive status in December 1990, this fact does not render unreliable the procedures used to determine whether impoundment was appropriate in this case.

11

as demonstrated by the GDA's immediate seizure of Reams' equines, requiring additional procedural safeguards in the form of a hearing prior to impoundment would run the risk of causing further harm to animals who are being deprived of adequate food and water. Cf. Siebert, 256 F.3d at 660.

Finally, the state's interest in preventing the inhumane treatment of animals is undeniably substantial and would be significantly compromised if the state were to require a hearing before impounding malnourished equines. Based on the foregoing, we conclude that a balancing of the competing interests in this case demonstrates that a pre-deprivation hearing was not mandated by the Due Process Clause.

B. Adequacy of Notice

We also reject Reams' contention that she was entitled to personal notice of her right to challenge the impoundment. To be constitutionally adequate, "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Grayden, 345 F.3d at 1242 (quoting Mullane v. Cen. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950)). "For one hundred years, the Supreme Court has declared that a publicly available statute may be sufficient to provide [constitutionally adequate] notice because individuals

12

are presumptively charged with knowledge of such a statute." Id. at 1239. Thus, where remedial procedures are "established by published, generally available state statutes and case law," law enforcement officials need not take additional steps to inform a property owner of her remedies. City of West Covina v. Perkins, 525 U.S. 234, 241, 119 S. Ct. 678, 681 (1999). Cf. Memphis Light, 436 U.S. at 19, 98 S. Ct. at 1565 (where administrative procedures for resolving accounting disputes were not described in any publicly available document, due process required utility company to inform customers of those procedures "or some specified avenue of relief").

In Grayden, we held that statutory notice of state remedies in connection with a condemnation order that gave the tenants only thirty-six hours to vacate their homes was constitutionally inadequate because it was not "reasonably calculated to inform the tenants . . . of their right to choose between acquiescing in or contesting [the] condemnation order." 345 F.3d at 1243. In so holding, we emphasized the "extremely important" fact that the tenants were facing eviction and had only thirty-six hours to vacate their homes, during which time "they had to complete a multitude of tasks, which ranged from securing alternate shelter to collecting their personal belongings to making accommodations for work or school." Id. Conversely, in Arrington v. Helms, 438 F.3d 1336 (11th Cir. 2006),

13

we held that custodial parents who did not receive state-collected child support payments were not entitled to individualized notice of their right to challenge the state's mishandling of their payments. We reasoned that,

> [u]nlike the tenants in <u>Grayden</u>, Alabama's custodial parents have significantly more than 36 hours to locate the relevant public documents and invoke their right to a hearing. From the time a custodial parent learns [the state] has erroneously deprived her of a child support payment, to the time her right to a hearing expires, she has 30 days in which to locate and read the statutes, regulations, and publicly available documents discussed above, and submit a written request for a hearing, . . . [t]his one-month window constitutes a reasonable amount of time under the <u>Mullane</u> standard.

<u>Id.</u> at 1353.

Under the circumstances of this case, we find that statutory notice of the right to contest the impoundment was reasonably calculated to provide Reams with contemporaneous notice of her right to, and the procedures for requesting, a hearing, and was thus constitutionally sufficient. Pursuant to O.C.G.A. § 2-2-9.1(d), Reams had thirty days from the time of the impoundment to request a hearing. As was the case in <u>Arrington</u>, this was ample time for Reams to consult publicly available documents, discover her right to a hearing, and exercise that right.

C. <u>Adequacy of Post-deprivation Remedies</u>

Reams contends that, even if she was not entitled to pre-deprivation notice

14

and a hearing, the process she did receive was constitutionally inadequate because: (1) she had to wait seven months before she was afforded an initial hearing, and (2) the settlement conference in which she participated with GDA officials "was not meaningful in a constitutional sense as it did not offer [her] the right to subpoena evidence or witnesses, directly or cross-examine witnesses, or present her case to an unbiased decision-maker." Appellant's Brief at 26.

The Humane Care for Equines Act affords equine owners an opportunity for a hearing to contest any impoundment. It provides:

> Any . . . equine owner . . . aggrieved or adversely affected by any order or action of the Commissioner to include . . . impoundment . . . upon petition within 30 days after the issuance of such order or the taking of such action, shall have a right to a hearing before a hearing officer appointed or designated for such purpose by the Commissioner. The decision of the hearing officer shall constitute an initial decision of the Department of Agriculture, and any party to the hearing . . . shall have the right to final agency review before the Commissioner.

O.C.G.A. § 2-2-9.1(d) (quotation marks omitted). Even assuming, arguendo, that the process Reams received under the Act was inadequate "from a timeliness standpoint" and not "truly meaningful," Appellant's Brief at 24, her § 1983 due process claim is nevertheless incognizable. It is well-settled that a constitutional violation is actionable under § 1983 "only when the state refuses to provide a process sufficient to remedy the procedural deprivation." McKinney v. Pate, 20

15

F.3d 1550, 1557 (11th Cir. 1994) (en banc); see also Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232, 1238 (11th Cir. 2003) ("[E]ven if a procedural deprivation exists . . . , such a claim will not be cognizable under § 1983 if the state provides a means by which to remedy the alleged deprivation."); Cotton, 216 F.3d at 1331 ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."). In Cotton, we observed that

> [t]his rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.

Cotton, 216 F.3d at 1331 (quotation marks omitted); see Horton v. Bd. of Co. Com'rs of Flagler Co., 202 F.3d 1297, 1300 (11th Cir. 2000) (no federal procedural due process violation under McKinney if state courts "generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered").

The question is thus whether the state provided Reams with the means to present her allegations, demonstrate that the impoundment was wrongful, and receive redress from that deprivation. See Narey v. Dean, 32 F.3d 1521, 1527 (11th Cir. 1994). We find that it did. In addition to administrative review, an

16

equine owner like Reams who is adversely affected by an order or action of the Commissioner may, pursuant to O.C.G.A. § 2-2-9.1(n), seek judicial review of the Commissioner's final decision in accordance with the Georgia Administrative Procedures Act ("APA"). That Act provides:

> Any person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. . . . A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

O.C.G.A. § 50-13-19(a). On review, the superior court "may reverse or modify the [agency's] decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [i]n violation of constitutional or statutory provisions." Id. § 50-13-19(h). Because "[i]nherent in [the] power to review is the power to remedy deficiencies and to cure violations of due process," McKinney, 20 F.3d at 1563, the review available in this case "more than satisfies [the] requirement" that the state provide a remedy that is adequate to correct the alleged procedural due process violation. Narey, 32 F.3d at 1527 (quotation marks and citation omitted); Cotton, 216 F.3d at 1331 ("[C]ertiorari [to the state courts] is generally an adequate state remedy."). Accordingly, we agree with the district court that "[t]he judicial safety valve provided by the Georgia [APA] foreclose[d] any constitutional challenge to the

17

procedural adequacy of the hearing-and-appeal procedure set forth in the Humane Care for Equines Act." R5-85 at 15. Inasmuch as Reams failed to establish a constitutional violation, appellees were entitled to qualified immunity. See McKinney, 20 F.3d at 1557 (due process violation not complete "unless and until [a] State fails to provide due process" (citation and quotation marks omitted)).

## III. CONCLUSION

Reams appeals the district court's grant of summary judgment in favor of Appellees on qualified immunity grounds. Because we conclude that available state remedies were adequate to cure any erroneous deprivation of Reams' protected interest in her equines, Reams has failed to establish that her procedural due process rights were violated. Accordingly, the district court did not err in finding that Appellees were entitled to qualified immunity.

**AFFIRMED**.

BARKETT, Circuit Judge, concurring specially:

I concur in the district court's conclusion that summary judgment was appropriate for the defendants in this case. I agree that the district court was correct in finding that due process was satisfied by the availability of both administrative and state-court review. Because there is no constitutional violation in this case, those defendants sued in their individual capacities are also entitled to qualified immunity.